THOMPSON *et al. v.* CHANDLER.[*]        . '

(Division A. Nov. 1, 1926.)

[109 So. 865. No. 25772.]

FALSE IMPRISONMENT. *Evidence held insufficient to support verdict against school officers for false imprisonment of student.*

Evidence that school officers, after secret marriage of girl student, returned her to school and to father apparently without protest or objection by girl, *held* insufficient to support verdict for damages for false imprisonment.

*Corpus Juris-Cyc. References: False Imprisonment, 25CJ, p. 547, n. 20.

APPEAL from circuit court of Winston county.
HON. W. W. MAGRUDER, Special Judge.
Suit by Mrs. E. J. Chandler against W. E. Thompson and others. Judgment for plaintiff, and defendants appeal. Reversed and judgment rendered. ·

*E. M. Livingston* and *Wells, Stevens & Jones,* for appellants.

I. *The verdict was contrary to the evidence.* Appellee utterly failed to produce any proof of the vicious allegations of her declaration and the proof failed to show coercion, intimidation, insult or outrage, offered to or

imposed upon the appellee. On the other hand, the evidence shows that appellants acted in good faith, that their actions were reasonable and fully warranted under the circumstances in which they found themselves.

The court should bear in mind that appellants are not to be judged in cold retrospect but by the position and circumstances in which they were placed and under which they acted. It is hornbook law that the plaintiff in an action for tort must prove the source of her damages, its nature and extent and that it was caused by defendant; and if any one element is missing, her case falls.

There is practically no evidence in this record which specifies the nature or extent of the illness caused to appellee; no medical testimony was offered. There is nothing in the record as to what she paid out for doctor and drug bills, no evidence of any pecuniary loss of any kind or character. On this point the evidence leaves the case utterly uncertain and the proof on this element of her case falls far short of what the law requires.

There is no satisfactory proof in the next place of the source of the alleged illness. It is not shown that her illness was due to any act done by appellants. On the other hand, the evidence shows that no one who acccompanied her on the trip from Louisville to Noxapater, from Noxapater to•Why Not and from Why Not back to Noxapater suffered by ill results. The causal connection between the events in which she participated and her alleged illness is utterly unsupported by the evidence. Finally, there is no evidence here which proves that these appellants were guilty of any action for which they are responsible in law. For a general discussion of this subject see Corpus Juris on Damages, p. 753 et seq.

II. *The verdict was contrary to law.* For principles of law controlling teachers, see: 35 Cyc. 1134, par. 3; *Stevens* v. *Fassett,* 27 Me. 266; *State* v. *Randall,* 79 Mo. App. 226, holding that it is the duty of a teacher to look after the *morals* and safety of his pupils and to do what-

ever is necessary to those ends, since the teacher stands *in loco parentis.*

From the principle that the teacher stands *in loco parentis* flows the presumption that his actions are stamped with the proper motive, are done in the exercise of proper discretion and whoever attacks the action of the teacher in the control of his pupil has the burden of demonstrating that the teacher acted without the proper motive and in an unreasonable manner; that his discretion was abused; and before a teacher is liable, it must be shown that he acted willfully, wantonly and maliciously. See 35 Cyc. 1137, subdivision E. See also the following cases: *Ferteich* v. *Michener,* 111 Ind. 472, 11 N. E. 605, 14 N. E. 68, 60 Am. Rep. 709.

Moreover, a teacher is not liable for assault and battery for an error of judgment in punishing a pupil when he acts in good faith and without malice, and the presumption that he acts in good faith and without malice attends his action in the control of his pupils. See 35 Cyc. 1139, subdivision B. See also the following cases: *Fox* v. *People,* 84 Ill. App. 270; *Patterson* v. *Nutter,* 78 Me. 509, 7 Atl. 273, 57 Am. Rep. 818; *Heritage* v. *Dodds,* 64 N. H. 297, 9 Atl. 222; *Quinn* v. *Nolan,* 7 Ohio Dec. (Reprint) 584.

If a teacher is to maintain discipline at all, he must of necessity be clothed with such power as will give him the right to know and look into, not only the condition of his pupils within the schoolroom and on the campus, but also off the school grounds and under the law he has such authority. See *Kinzer* v. *Thoms,* 105 N. W. 686, 3 L. R. A. (N. S.) 496 and casenotes.

Apply now the law of the foregoing authorities to the acts of the appellants and what result do we reach? The evidence utterly fails to show any improper motive on the part of the appellants; and their evidence as to their motive *stands uncontradicted.* Moreover, not a single act of these appellants is shown to have had any motive of malice, ill will, oppression, intimidation or abuse in it.

It cannot be questioned that they were acting within the scope of their authority as heads of the school, a governmental agency.

*Flowers, Brown & Hester,* for appellee.

I. The verdict was not contrary to the evidence. The actions of the defendants were such as to evince a total disregard for the rights of appellee. The plaintiff testified that she was taken against her will and carried on a wild night ride from Noxapater to Why Not; that she was called from her bridal chamber at midnight by an officer of the law sent there by defendants with a warrant for the arrest of her husband; her husband was threatened with arrest and told that he could go to jail or back to Noxapater; the peace and tranquility of her bridal night disturbed and interrupted by the rude appearance of the defendants and the officer acting at their request and upon an affidavit sworn out by them; the peremptory order to dress and leave the hotel to which she and her husband had lawfully repaired on their wedding night; held up as the target and butt of wagging tongues and gossip and she a woman above the age of eighteen years, lawfully married to a man above the age of twenty-one.

We quite agree with counsel when they exclaim that these parties ''are not to be judged in cold retrospect, but by the position and circumstances in which they were placed and under which they acted.'' Was a bride of a few hours ever placed in a more awkward position? Was a bride ever exposed to greater indignity and humiliation? And all of this was the result of the actions of these appellants.

Counsel complains that it is not shown that the plaintiff's illness was due to any act done by appellants. We answer that everything that happened to her after she was wrongfully taken from her room in the hotel at Louisville and until she was released to her husband the

following night at Noxapater was due solely and only to the acts of these appellants. And we say further that she was entitled to recover not only for actual physical illness, but for the shame, humiliation and disgrace so abundantly heaped upon her by the unwarranted acts of appellants.

II. *The verdict was not contrary to law.* We have no quarrel with the authorities cited by counsel to the effect that a teacher stands *in loco parentis.* That rule has no application here for the very good and sufficient reason that even a parent could not lawfully act as these appellants acted. A parent has no more authority in the eyes of the law to interfere with the civil rights of his adult child than an outsider. This young man and young woman were of legal age; they were lawfully married and were entitled to the protection of their constitutional guaranty of life, liberty and pursuit of happiness.

The statute did not require even the consent of her parents to the marriage, much less the consent of her teacher who merely stood *in loco parentis.* She was a woman competent to contract a lawful marriage of her own free will and accord, and when she did this and left appellants' school, as both she and her husband had a perfect right to do, appellants had no lawful right or authority to pursue her and take her away from her husband. We repeat that her own father would not have had a lawful right to do so. Her's was a legal marriage; and a legal marriage is a legal emancipation from parental control. A *status* was thereby created which public policy requires shall not be disturbed. The teacher could not possibly have any higher rights than the parents and it must follow that if the parent's control ended with the marriage, then the teacher's control must have ended also. *Hewellette* v. *George,* 68 Miss. 703, 9 So. 885, 13 L. R. A. 682. See the general rule announced in 20 R. C. L., p. 612, par. 22.

He who interferes with the civil rights of the citizen acts at his peril. He may be moved by the loftiest of

motives, yet if he makes a mistake, he cannot justify his action by citing his purity of purpose. When the appellants took this young wife from her husband and caused her to leave her bridal chamber in the midnight hours and go with them, they acted at their peril.

*E. M. Livingston* and *Wells, Stevens & Jones,* in reply, for appellants.

Counsel for appellee have attempted to shift the theory of this case. The theory on which the declaration was framed, on which the case was tried and on which the court gave its instructions was whether or not appellants had exceeded their authority as teachers and whether they had acted in bad faith.

There is yet another view of this matter. If it be conceded that appellee is now right in asserting that this is a suit against appellants for invasion of her marital rights, then under no circumstances can she recover for the law recognizes in her no such right of acton and the abolishment of the disability of coverture in no wise aids her. *Austin* v. *Austin,* 136 Miss. 61.

At the common law a married woman could not sue for an invasion of her marital rights except perhaps in the two instances of alienation of affection and of criminal conversation, and this case certainly cannot be said to contain an element of either. See 30 C. J., Husband and Wife, sec. 684.

No statute in Mississippi gives the wife a right of action for the invasion of her marital rights under the facts complained of in this cause, conceding that the facts complained of show that there was an invasion of her marital rights. Under the Mississippi law the right to sue for the loss of consortium belongs to the husband, notwithstanding that the disability of coverture has been abolished. See *Brahan* v. *Meridian Light Co.,* 121 Miss. 269, 83 So. 467, 30 C. J., p. 969.

Counsel takes the position that no evidence of the motive of appellants was proper in this case because it was

not plead in justification but the evidence was competent in this case to show the intent with which the appellants acted and for that reason Mrs. Thompson should have been allowed to testify as to the purpose and intent with which she and her husband followed appellee. See 30 C. J., p. 1131, sec. 996, last paragraph.

Moreover, in the case of a parent, relative, guardian, or one standing *in loco parentis,* the action is presumed to have been done in good faith. See 30 C. J., p. 1136, secs. 1007-1008; *Tucker* v. *Tucker,* 74 Miss. 93.

COOK, J., delivered the opinion of the court.

This is an appeal from a judgment for two thousand five hundred dollars in favor of the plaintiff in a suit which grew out of facts, which, for the purpose of this opinion, may be briefly summarized as follows:

The appellant, W. E. Thompson, was superintendent of the Winston County Agricultural High School, located at Noxapater, in that county, and his wife was a teacher in the school, and one of the matrons in charge of the girls who were pupils and boarding at the school. The father of appellee, Rev. Mr. Chadwick, is a Baptist minister, who was, during the years 1922 and 1923, employed as the principal in charge of another school in that county. During the scholastic year of 1922-1923, the appellee, who was a minor, and E. J. Chandler, were pupils in the school taught by Mr. Chadwick. On account of a love affair between the appellee and E. J. Chandler, the appellee's father entered her as a pupil in the Agricultural High School and directed the appellants to prohibit her from communicating with Chandler and fully acquainted them with the reasons for putting her in their care.

The appellee finished out that school year as a pupil in the Agricultural High School, and in the fall of 1924 she was returned to the school by her father. Her lover, E. J. Chandler, also entered the school, and some weeks thereafter they secretly arranged to be married. In pur-

suance of a prearranged plan, they left the school grounds in the nighttime, and were married on the public highway between Noxapater and Louisville Miss., and then proceeded to the Woodward Hotel at Louisville, where they registered as man and wife. Upon discovering the absence of these two pupils, the appellants, suspecting what had occurred, instituted a search for them. They proceeded to the town of Louisville, where they discovered the marriage had taken place, and that appellee and her husband had retired to their room. With the assistance of certain peace officers, the appellants called the appellee and her husband into the lobby of the hotel, where they produced their marriage certificate showing a lawful marriage. Upon the production of this marriage certificate, the officers disappeared from the scene, but the appellants, conceiving it to be their duty to carry the appellee to her parents and to report to them what had occurred, continued to discuss with them some plan of communicating with her parents.

Under our view of this case, no good purpose would be served by here detailing the negotiations that then ensued between these parties. It will be sufficient to say that, according to appellee's testimony, it was finally agreed that they would return to the school and communicate with her father the following morning. The entire party then voluntarily returned to the school together; the appellee and her husband being in a jovial mood over the fact that they had so easily outwitted the appellants. Upon arriving at the school some time after midnight, Chandler retired to his old room, while the appellee accompanied the appellants and Prof. Douglass to the superintendent's office. There further discussion of the best means of communicating with appellee's parents took place. Appellee testified that, at her suggestion, it was decided that they would drive down to the telephone exchange and telephone them, although she says she advised appellants that her father had no telephone. She further testified that, with her assistance,

the appellant W. E. Thompson located on a map the place of residence of her father and the route from Noxapater to that point, and that Mr. and Mrs. Thompson and appellee then again boarded the automobile, as she presumed, to drive to the telephone exchange, but that Mr. Thompson drove away in the direction of Meridian and her father's home. They arrived at her father's residence the following morning, and, after a conference with her parents, they started on the return trip to Noxapater, where they arrived late in the afternoon. There she found her husband, and they went, presumably, happily on their way.

Shortly after the events above related, this suit for false imprisonment was filed, and the suit proceeded throughout, and was submitted to the jury by instructions on behalf of the plaintiff, on the theory that the plaintiff, was illegally restrained of her liberty by means of coercion and intimidation and resulting fear.

It will not be necessary for us to pass upon the interesting questions discussed by counsel as to the authority of a teacher of a school over the pupils, under the circumstances here shown, for the reason that, under any view, we do not think the evidence in this record will support this verdict for damages for false imprisonment. The appellee's own testimony clearly establishes that she and her husband consented to return to the school with the appellants, and their act in so doing was purely voluntary. She does testify that she did not consent to make the trip to the home of her parents, and that when she started from the school grounds she did not know that her father's home was to be her destination, but there is not a word of testimony to indicate that she made any sort of protest or objection throughout the entire trip, and, under the appellee's own version of the events of the night, we think the appellants were justified in concluding that she approved of the plan to confer with her parents personally. Certainly there is no testimony that would authorize a finding by the jury

that there was any coercion or intimidation of the ap
pellee, and we think the peremptory instruction re-
quested by the appellants should have been granted.

The judgment of the court below will therefore be re-
versed, and judgment entered here for appellants.

Reversed, and judgment here for appellants.

*Reversed.*